The first issue on appeal is one of claim construction. The District Court held that bottom magnetic attraction only. I hold in my hands a sample of Revolution's eyewear. The magnets are attached on the auxiliary frame and then they fit up underneath the frame. The court held that the claim was not limited merely to attachment from the underside, but there could be other means of securing it, including from the top, even though the claim doesn't make any reference to top mounting. The court said that the claim was not limited in that way. That had implications for an anticipation because of a reference that was provided by Aspex that had both top and bottom mounting. That's Takumi. Takumi, correct. The District Court was incorrect for the following reasons. There are several references in the file history to disclaimer of any top mounting whatsoever. I won't list them all, but two that were from the appeal brief that was because the examiner continued to reject the claims. We appealed the case and in the appeal there were two places that are worth noting. It stated, the only support for auxiliary eyeglasses is mutual attraction of magnets. That's at 1188. The only place the magnets are located is on the bottom. So if the only support is the attraction of magnets, it can only be magnetic attraction from the bottom. The second place in the appeal brief, which is very telling to the Board of Patent Appeals, which eventually allowed the claims based on these arguments, said, the differences between the prior references and the claims at issue is that the auxiliary glasses are attached underneath the primary glasses. And as such, the auxiliary glasses are not supported on the primary glasses. They are merely attached to the underside of the frames of the primary glasses by magnets. But, Mr. Trojan, that was a 102A type finding by the court, right? That's correct. So it was a broad determination of the claim itself. If you narrowed the claim, would that also be involved in an obviousness type of invalidity defense? Well, there were obviousness arguments made during the prosecution as well. And there was declaration submitted, a 132 declaration, submitted to overcome the obviousness. The declaration could not have been submitted with respect to any 102 reference because a 132 declaration can only be applied to obviousness. So there were other grounds for overcoming the obviousness. But if we narrow the claims the way you're saying, to maintain validity, is it the issue of obviousness brought right into play at that point? Well, it may very well be. But again, that would be a fact question. And with respect to obviousness, the declaration in Madison would be highly relevant to that issue because she describes exactly why, as an inventor, she felt it was essential that there be the top arm to it. So it would not have been obvious in view of the Madison declaration to have a bottom arm only, and bottom mounted only, in 1997. But you also have the Chu reference, and you have several others that show that maybe removing the support and keeping the two magnets might be sufficient. Well, it might be obvious in that regard. I do not believe an obviousness rejection is properly before the court now. Well, I understand that. But you're asking us to narrow the meaning of the claim. But the more you narrow it, the more problem you might have on infringement and otherwise. But would you also have a problem with obviousness at that point? Well, actually, it's not in this record, but there was a subsequent patent issued from a continuation of this, in which the patent office allowed the insertion of the word only from bottom mounted, and there were objections there on all grounds, on obviousness and anticipation. So the patent office apparently didn't think that. So you focused on the prosecution history. Really, your whole case depends on the prosecution history, doesn't it? Because as I look at, in looking at the language of the claims and the doesn't present itself there. So isn't your whole case and isn't this whole case about the prosecution history? Well, certainly it's if the claim is interpreted the way the court has done it, the district court has done it, then it doesn't. The arguments as to whether Dekoumi has a top or bottom arm that is close use for support. I mean, a top arm that's used for support is no longer relevant. No, but I'm saying your argument for this narrower claim construction really turns, does it not, on the prosecution history? Absolutely. Absolutely. If there's another patent where you succeeded in getting the word only inserted, that overcomes the entire argument, doesn't it? Those patents haven't been added to this suit, have they? No, they have not. That issued after this occurred and then the patent office allowed the insertion of the word world, the only word in it. I didn't feel I can make that an argument here because it's an event that's not a part of this record, but it is. Was that a CIP? I believe it was a straight continuation. In fact, I'm sure of that. If or if it was a CIP, the added matter would have been with respect to other embodiments that have been added much later, and this was directed to this original embodiment of the claim. The reason I know that is because Mr. O'Reilly, who had prosecuted the applications, died in August of 2004, and I've assumed responsibility for the file and the prosecution. Considering the unequivocalness of the disclaimer, it seems readily apparent that the district court that it really is, this claim really does read on only a bottom-mounted device. I believe that considering how unequivocal it is in the applicant's insistence upon it only being bottom-mounted, if the applicant had accused anyone of infringing that had a top arm on it, that would have been so outside the bounds that it would have been sanctionable in and of itself. So if it can't, another aspect of this is that you positively recite what you're claiming, and normally you would not recite what you're not claiming. And so to go and say, well, we do not include a top arm really isn't even appropriate. So it's not the importation of the limitation from the filing history. It's just a recognition of what the claim positively recites, and it only discusses bottom-mounting. It makes no reference to top-mounting. It overcomes all the top-mounting references. So that shifts us to what the evidence is. So then we have, if we accept the proposition that it is a bottom-mounted only claim, then it becomes a factual dispute as to the state of the prior art, what Takumi really was. We have a salesman from a company in 1997 declaring what he remembered the device to be. We don't actually have one from 1997. Apparently this is only some sort of replica. No one has testified that this is an actual device from 1997 or 1998, or no one has testified who'd actually made it. And the thing that's in these photographs appears to be what I remember. You're referring to the Takumi 170 series. Correct. And then we have the salesman going on and actually making claims as to what the purpose of the top arm was. It was purely aesthetic and served no functionality. In balance to that, we have the declaration of Julie Madison, an actual inventor of the eyewear, who goes through a detailed explanation of why the top arm was there and its functionality of preventing the auxiliary frame from falling off. And that was what it was intended. So was there evidence as to what was new and different? And was it because now more powerful magnets are available? Or why, in fact, were those reasons no longer applicable? Was that in the record? No. We only know what the state of mind was of the inventor at the time of the invention. Why later Gary Zellman, the inventor of the 913 patent here, came up with the alternative. We don't have that in the record. But I don't think that that's necessary to the finding. Because really what we're talking about is a clear conflict in the evidence. We have the actual stronger evidence that's consistent with the engineering drawings from Sunreeves, the manufacturer of Takumi. And so her testimony describing the functionality of it is far more it's right there. You can see it exactly looking like it's providing support. So that's at 360-364, the engineering drawings. And I see that I'm into my report. Yes, let's save your rebuttal time, Mr. Cushing. Mr. Nicodema. Good afternoon, Your Honor. May it please the court, for this notion of prosecution history disclaimer to apply, the arguments in the file history have to be linked to claim language. They can't just be arguments, general arguments concerning patentability of the invention over the prior art. Because the law is that for prosecution disclaimer to apply, you have to make arguments that limit a claim term. And the examiner actually pointed that out to the inventor during prosecution. It's usually that way, but I'm just trying to think why you can't say this is what I've invented, and this is what's in the prior art. And it's different. Because it's not linked to the, because the claims define the invention. When all's said and done, when the smoke clears, we look to the language of the claims to see what the patentee invented. And if she's just making arguments, if she's just making arguments in the abstract and not linking them to the claims, even if the examiner requests that. I'm not saying it should be linked to the claim, but, and I observed your argument that it has to be linked to specific words in the claims, and that's what made me wonder why, in fact, if that particular argument is directed to understanding, explaining the invention to the examiner in the first place, most of these prosecution arguments occur because the invention is being explained to the patent examiner. And what usually happens during prosecution, what happens most often is if there isn't a direct link, which the examiner comes back and says, you're violating patent office rule 1.111B, which says an argument of patentability has to be specifically linked to language in the claims. And with your Honor's permission, I'd like to read you the one portion of the appendix, the one portion of the prosecution history where the examiner in this case said exactly that. It's at page 998 of the appendix. And this is what the examiner says. Applicant's arguments fail to comply with 37 CFR 1.111B because they amount to a general allegation that the claims define a patentable invention without specifically pointing out how the This is really tied to the aspect of whether you also have to say, as here, however, I'm not claiming a structure which has support above the background, for instance. I mean, that's really what we're getting to, isn't it? Whether you have to put in your specification the things you're not claiming, as well as the things you are. Well, if you want to argue that there was a clear and unmistakable prosecution disclaimer, that's right. And the inventor knew how to put the word solely in the claims because he did it. Yeah, no, I agree. If you want to argue there's a disclaimer, you have to have a disclaimer. And that's what their case is. That's what the appellant's case is. There was a prosecution history disclaimer that affects all the claims at issue and that narrows the claims. We have the unusual case here where the patentee is trying to narrow his own claims. When you write a specification, you disclaim the rest of the universe of scientific knowledge. And in that specification, Your Honor, the inventor never did disclaim the rest of that universe because there are... I should hope not. There are embodiments. They're hard enough to understand as it is. That's correct, Your Honor. And in figures four to six of that patent, it shows an alternate embodiment of the invention where there's a clip on the nose bridge and that provides an additional means of support. That was never disclaimed. The $64,000 question is, why didn't they put the word solely in the claims? Well, you're saying, let's say you get a search and you get a search of 50 references, then you have to put in your specification. I'm not claiming this and I like one by one to dispose of every reference. I don't believe it works that way. I'm not saying that, Your Honor. But in this case, we're dealing with one word. If the was easy enough to put it in the claims. And if we look at what the examiner said, the examiner didn't acknowledge the solely argument. He kept rejecting the claims by saying bottom versus top is obvious, bottom versus top is obvious. Yeah. Because... That's a good rejection. Because the solely argument, because the solely word was never in the claims. And the examiner took the inventor to task and said, you're violating the patent office rules. You're not linking your arguments. Well, they tried to put in the solely and the examiner wouldn't let them. No, that isn't what happened. They put in the word solely and the examiner rejected the claims under 112 for reasons unrelated to solely because of...  Because of other words. Wasn't it new matter? I'm sorry? Wasn't it new matter? There were new matter objections, Your Honor, but it didn't have to do with the word solely. It had to do with other words that were in those new claims. They canceled the claims, didn't give any reason why. And that was the last time we see the word solely. Well, they put it in another specification. I'm sorry? As we heard this morning, they just refiled a CIP. Well, if they did that and put it in another specification, obviously, this is not part of the record. That's even more evidence that the original patent is not limited to solely because it's not there. But Mr. McAdee, you're saying that it only can be expressed in a negative way. Why can express it positively? My invention is the two magnets, period. So are the two magnets. Does it have to be in a claim in order to do that? If it's for it to be a prosecution history disclaimer, absolutely, Judge. Well, how do you define the invention? The invention is defined by the claim. That's right. And the claim language on its face does not limit the support of the auxiliary frame on the primary frame to only the magnets. There's no dispute there. The claim doesn't limit it. The specification doesn't limit it. And that's what the district court, I believe, correctly found. She looked at the prosecution history as a whole and said, you could have put in the word solely. You did it once. You took it out. It's not part of the claim. The inventor even filed two commercial success declarations. Mr. McAdee, let me ask you this. Assume for the moment you were representing, this is in the realm of the hypothetical, obviously, but assume for the moment you were representing someone who manufactured the Takumi device. Are you saying you would not argue that your accused device, say Takumi, the Takumi device was accused of infringement here under this patent. Are you suggesting you wouldn't argue that the patentee gave up coverage to the Takumi device? No. You wouldn't argue that? No, not on this record. Well, it seems like a pretty good argument. If you were representing Takumi, they were accused of infringement, don't you think? Well, you're asking me, as an attorney who makes good faith arguments before court, would I make that argument? I'm looking you right in the eyes and telling you no. But with all of these references in the, I mean, there's something like 18, arguably 18 references you can point to in the prosecution that suggests disclaimer here. I don't believe that, Your Honor. It was maybe four or five times where the attorney said that. But let's look what the inventor himself did, because we're talking about distinguishing top-mounted from bottom-mounted. The inventor filed two, not one, two commercial success declarations. And he said in both of them, I'm better than top-mounted. He didn't say, I'm better than top-mounted because my sole means of support is the bottom-mounted magnets. He said one thing in those declarations about why he was better than top-mounted. He said, because in top-mounted, the magnets are visible and it's unappealing. That's what he said in those declarations. And I can give you the cites. Well, that may very well have accounted for the commercial success. But we're talking about obviousness rejections here. The examiner kept rejecting the claims for obviousness. He has a different structure. And he says this structure is commercially successful. But he wasn't linking that commercial success to solely being bottom-mounted. They're arguing here that that was the entire basis for the claim being allowed. But in the examiner's reason for allowance, he didn't say because the sole means of support. He was finally worn down for whatever reason. And he said, all right, bottom versus top is not obvious. And I'd like to spend a few moments, Your Honor, on the other issue. If the court decides to read solely into the claims, is there a triable issue of fact? I didn't want to interrupt, but you were going to give us some cites. Yes, sir. Just when Judge Newman asked you a question, you were going to give us some cites for something in the record during the prosecution? Yes. I'll give you a few cites. I didn't want to interrupt you. Oh, that's fine. I can do it very quickly, Your Honor. I didn't mean to interrupt you. Oh, no, no, no. When the examiner took the inventor to task for not linking his arguments, that's A-998. A-99... Eight. The two commercial success declarations, the first one is 9-12 to 9-20. And the second one is 10-39 to 10-42. Now, Revolution has argued that their position in the district court is extrinsic evidence. And I don't agree. They never argued solely in the district court. They never argued that the attorney was trying to limit the whereby clause by adding the word solely in the district court. They argue this now for the first time. In the claim construction... They're stuck with what the district court decided. Well, in the claim construction statement, Your Honor, which was negotiated, which formed the entire basis for the lawsuit, for the proceedings below, they said the whereby clause wasn't a claim limitation, and they never argued solely with the limitation. Job now is to convince us that the district court was wrong. They ignored the premises of the district court's decision. That isn't going to do them any good. Well, I think it shows the inventor's state of mind as to his prosecution history when there wasn't the Takumi reference staring him in the face, when they said, prosecution history doesn't limit the claims. That's what they said before we showed them Takumi. After that, then they said the prosecution history limited the claims. But, Your Honor, I'd like to focus on this Madison declaration because counsel made a point of that. We argued in the district court, and we also argued here, that Madison's declaration is based on hearsay, and the district court found it was. She talks about the design intent of Takumi, of that upper arm based on conversations with the Sunreef designers. That's hearsay. Revolution's argument is, well, Madison was one of the designers. She was part of the process. It's still hearsay. They're out-of-court conversations offered for their truth. It's hearsay. But the district court, even though she agreed with our hearsay objection, she said, all right, let me look at Madison's declaration. And I suggest, members of the court, that the four reasons Madison gives don't matter. They don't raise an issue of fact. Even if the court were to reach solely into the claims, Madison's declaration doesn't contradict our expert, David Chow. Now, counsel has- Is that an issue for the district court to decide, not for us? You can decide that. You can decide. It's summary judgment. It's the no-hold review. You can decide whether Madison's declaration matters. On legal issues? On legal issues. So, if we decide to send it back, then the whole game is opened up as to whether or not Julie Madison decides to be a witness or otherwise. Well, if you send it- Add additional witnesses, too. If you send it back, but based on the record, you can decide whether there's an issue. Whether there's a hearsay issue on her declaration? Yes, you can decide whether there's a hearsay issue, and you can also decide whether her declaration matters. Because she doesn't address the issue of sole support. She talks about things that are, if the device would somehow fail, what may or may not come into play. But there's no dispute on this record. Nobody disputes David Chow's testimony that the only thing that supports the normal operation that holds the auxiliary frame to the primary frame are the bottom-mounted magnets. Nobody contradicts him. So, there's nothing to send back. Even if you read solely into the claim, there's no dispute. There's no factual dispute whatsoever. Even if you decide, all right, some of what she says isn't based on hearsay, there is no dispute. When she talks about the upper arms providing ballast to prevent the frame tilting forward, that has nothing to do with whether- with what holds the two frames together. What prevents the downward motion and detachment has nothing to do with it. When she talks about, well, the upper arm will prevent a user from pulling the magnets apart if they try to attach the frames. What does that have to do with what supports the frame, the auxiliary frame? Nothing. And when she says, well, sometimes the opticians distort the frames when they're putting in prescription lenses. Well, an anticipatory reference doesn't have to be perfect. She's not saying it happens all the time. She's not saying the Takumi's inoperative. It doesn't matter what happens some of the time. If the reference discloses each and every element of the claim, it's anticipatory, period. So what she says doesn't matter. So even if you read solely into the claims, there's still anticipation. There are no tribal issues of fact because nobody contradicts David Chow. Madison, she's a designer. She could have submitted a declaration saying, I contradict David Chow. He's wrong. This isn't how it works. She didn't. She didn't. And as to Mr. Mazera, the district court properly found he was the product manager at the time. He sold this product. He certainly has personal knowledge to talk about the design features of this product. But we're really talking about our technical expert, David Chow, who analyzed the device and found it to be anticipatory. He said in paragraph 20 of his declaration, the sole means of support for the auxiliary frame of the bottom-mounted magnets. And that is uncontroverted. Madison doesn't address it and it would have been very easy for her to do so. So you're saying, Mr. McKinney, even if we agree, even if we conclude that the district court erred in its claim construction with respect to this solely point, that still summary judgment in your favor is proper? Absolutely, Your Honor. Absolutely. Okay. Thank you, Mr. McKinney. Thank you. Summary judgment would not be proper at all. Council has not accurately described Julie Madison's declaration. Julie Madison goes into great detail about why there had to be a top arm. At that time, she even says at 652, the auxiliary frame had a tendency to fall off when the magnet in the bottom arm became disengaged from the magnet in the primary frame. The top arm served the critical function of preventing the auxiliary frame from immediately dropping to the floor. So she goes through her declaration and it's not hearsay. She's speaking from personal knowledge of one of the people who designed the eyewear about what that arm was there. Just common sense tells you that it doesn't... The idea that this is an aesthetic issue, that's what Mazzara claims that this is about, that this was just an aesthetic arm that they added for aesthetic balance. All you need to do is look at the Sunreef engineering drawings to see how precisely that top arm was put in place to provide top support so it wouldn't fall off. So clearly there's functionality there. When you said the Sunreef drawings, you're talking about the technical drawings of the Takumis. That's correct. Well, Mr. Chodes, let me ask you, if we were to agree with your claim construction argument and send it back, that would mean, would it not, that there would be a trial, correct? Correct. And you'd have Mr. Chow testifying, you'd have Ms. Madison testifying, right? Correct. Now, what if one, on the other hand, disagrees with your claim construction and we were to affirm the district court's claim construction? Is there any fact issue then? No, I'd lose. So you lose if... Okay. I do, absolutely. And so... As I understand it, then your argument is a material fact to determine whether the upper appendages are supporting or not. Correct. Whether it provides physical support. Support for the... Right, for the functionality of it. If they do, you win. If they don't, you lose. Correct. Correct. And so, you know, that raises an issue. As far as Ms. Madison being able to testify about this, she's testifying from her personal knowledge as an inventor. So she can testify to the exact thing that was going on when this was created. David Chow can only speculate as to what the upper arm was intended to be, serves its functionality. So truly, and especially when you also look at the fact that there seems to be a real question as to the evidence, because even though we don't have an actual Dekoumi eyewear, no one from Sunreeves was ever brought in, any of the other inventors, to contradict anything that Julie Madison was saying. But even though we don't have that, we do have photographs that appear to look like the arms were bent. Is that still a question of the spacing between the upper portion? Correct. If there's a large space, then you really can't call it support? Correct. So in some of the drawings, some of the photographs, it appears to be parallel. In the other photographs, it appears that it's been bent to give the illusion that there is no support there. And that contradicts Sunreeves' own engineering drawings that show it completely parallel in only a 0.4 millimeter difference in space. If the case were to go back, isn't that an issue that could pretty easily be sorted out by the district court? Whether these things have been bent or not. One way or the other. But I'm out of time, but I would think there would be need to be a trial. Any more questions? Thank you. Thank you both. Case is taken under submission. Thank you both for excellent work.